**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


TERRY LEE STIMMEL,            CASE NO. 5:14-cv-02081

            Plaintiff,          JUDGE JOHN R. ADAMS

     v.

ERIC HOLDER, et al.,        **REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
           Defendants.        OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    Plaintiff's Second Amendment Claims Fail As a Matter of Law. .................... 2

    A.    Plaintiff's Claims Do Not Implicate a Second Amendment Right. ...................... 2

        1.    Section 922(g)(9) Is a Presumptively Lawful Regulatory Measure Under *Heller*. ............................................................................ 2

        2.    The Second Amendment Right As Historically Understood Did Not Preclude the Disarmament of Criminals. ............................. 3

    B.    Even If Plaintiff's Claims Implicate the Second Amendment, Section 922(g)(9) Is Constitutional. ................................................................. 5

        1.    The Court Need Not Apply Strict Scrutiny. ................................ 5

        2.    In Any Event, Section 922(g)(9) Passes Muster Under Any Level of Review. ............................................................................... 7

    C.    The Application of Section 922(g)(9) to Plaintiff Comports with the Second Amendment. ......................................................................... 13

II.    Plaintiff's Equal Protection Claims Fail As a Matter of Law. ......................... 17

    A.    Plaintiff Has Conceded His Equal Protection Claim Premised on the Existence of Corporate Relief from Firearms Disability. ..................................... 17

    B.    Plaintiff Is Not Similarly Situated to a Person Subject to a Section 922(g)(4) Firearms Disability. .............................................................. 17

    C.    In Any Event, the Improvement Act Is Rational. ................................. 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Binderup v. Holder,*
No. 13-cv-06750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014)............................................. 13

*Brady v. United States,*
397 U.S. 742 (1970)...................................................................................................................... 19

*Citizens United v. Fed. Election Comm'n,*
558 U.S. 310 (2010)........................................................................................................................ 7

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985)...................................................................................................................... 18

*District of Columbia v. Heller,*
554 U.S. 570 (2008)........................................................................................................ 1, 2, 3, 13

*Enos v. Holder,*
855 F. Supp. 2d 1088 (E.D. Cal. 2012)..................................................................................... 5

*Enos v. Holder,*
585 F. App'x 447 (9th Cir. 2014) ......................................................................................... 5, 15

*Estelle v. Smith,*
451 U.S. 454 (1981)...................................................................................................................... 18

*Fla. Bar v. Went For It, Inc.,*
515 U.S. 618 (1995)........................................................................................................................ 7

*Fraternal Order of Police v. United States,*
173 F.3d 898 (D.C. Cir. 1999)................................................................................................... 20

*Galioto v. Dep't of Treasury,*
602 F. Supp. 682 (D.N.J. 1985),............................................................................................... 18

*In re United States,*
578 F.3d 1195 (10th Cir. 2009) ..................................................................................... 2, 5, 6, 11

*Jolivette v. Husted,*
694 F.3d 760 (6th Cir. 2012) ..................................................................................................... 19

*Laubis v. Witt,*
--F. App'x --, 2015 WL 140316  (6th Cir. Jan. 9, 2015)..................................................... 3, 6

*Logan v. United States,*
552 U.S. 23 (2007)........................................................................................................................ 12

*Maxwell's Pic-Pac, Inc. v. Dehner,*
739 F.3d 936 (6th Cir. 2014) ..................................................................................................... 19

*Schrader v. Holder,*
704 F.3d 980 (D.C. Cir. 2013),.................................................................................................. 13

*Scott v. Tennessee,*
878 F.2d 382, 1989 WL 72470 (6th Cir. 1989) ...................................................................... 17

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,*
775 F.3d 308 (6th Cir. 2014) .............................................................................................. passim

*United States v. Booker,*
644 F.3d 12 (1st Cir. 2011),................................................................................................. passim

*United States v. Carey,*
602 F.3d 738 (6th Cir. 2010) ....................................................................................................... 3

*United States v. Castleman,*
    134 S. Ct. 1405 (2014)................................................................5, 8, 10, 13

*United States v. Chapman,*
    666 F.3d 220 (4th Cir. 2012) ....................................................................15

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) ...............................................................5, 13

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013), ..........................................................passim

*United States v. Edge Broad. Co.,*
    509 U.S. 418 (1993)..................................................................................14

*United States v. Greeno,*
    679 F.3d 510 (6th Cir. 2012) ............................................................passim

*United States v. Hayes,*
    555 U.S. 415 (2009)....................................................................................7

*United States v. Khami,*
    362 F. App'x 501 (6th Cir. 2010)...............................................................3

*United States v. Lewis,*
    236 F.3d 948 (8th Cir. 2001) ....................................................................20

*United States v. Lewitzke,*
    176 F.3d 1022 (7th Cir. 1999) ..................................................................20

*United States v. McGill,*
    74 F.3d 64 (5th Cir. 1996) ........................................................................19

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010), .................................................................15

*United States v. Salerno,*
    481 U.S. 739 (1987)..................................................................................16

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ............................................................passim

*United States v. Smith,*
    742 F. Supp. 2d 855 (S.D. W.Va. 2010)...................................................12

*United States v. Staten,*
    666 F.3d 154 (4th Cir. 2011), ...........................................................passim

*United States v. Torres-Rosario,*
    658 F.3d 110 (1st Cir. 2011) .....................................................................14

*United States v. White,*
    593 F.3d 1199 (11th Cir. 2010) .......................................................2, 5, 6, 11

*Weinberger v. Salfi,*
    422 U.S. 749 (1975)..................................................................................10

*Williamson v. Lee Optical of Oklahoma, Inc.,*
    348 U.S. 483 (1955)..................................................................................20

## FEDERAL STATUTES

18 U.S.C. § 921(a)(33)(B)...............................................................................11
18 U.S.C. § 921(a)(33)(B)(i)...........................................................................12
18 U.S.C. § 921(a)(33)(B)(ii) .........................................................................12
18 U.S.C. § 922(g)(1) .......................................................................................3
18 U.S.C. § 922(g)(4) .............................................................................passim

18 U.S.C. § 922(g)(8) ........................................................................................... 14
18 U.S.C. § 922(g)(9) ...................................................................................... passim
18 U.S.C. § 925(c) ......................................................................................... 16, 19

**STATE STATUTES**
Ohio Rev. Code Ann. § 2919.25 (West 2010) ............................................................ 15

**LEGISLATIVE MATERIAL**
153 Cong. Rec. S15,970-02 ..................................................................................... 20
153 Cong. Rec. H12,351-04………………………………………………………..20

## INTRODUCTION

In the nearly 19 years since the enactment of 18 U.S.C. § 922(g)(9) and the nearly seven years since the Supreme Court recognized an individual right to bear arms in *District of Columbia v. Heller*, 554 U.S. 570 (2008), courts have uniformly rejected constitutional challenges to the application of this statute to persons convicted of misdemeanor crimes of domestic violence.  Plaintiff provides this Court with no valid basis for departing from the sound reasoning of these cases.  Though Plaintiff argues that the statute is overbroad by attempting to downplay the seriousness of all domestic violence crimes, this attempt fails.  As the Sixth Circuit recently stated, "[d]omestic-violence misdemeanants, by definition, are violent and non-law-abiding."  *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308, 337 (6th Cir. 2014).  Plaintiff himself was convicted of domestic violence after he reportedly threw his wife against a wall and knocked her to the floor.  He thus falls squarely within the intended scope of the statutory proscription and fails to show that Section 922(g)(9) is unconstitutional as applied to him.

Plaintiff's claims do not even implicate the Second Amendment because disarming convicted criminals who have committed domestic violence is consistent with the limited scope of the Amendment as it was historically understood.  Even if the Court were to proceed to means-end scrutiny, however, Section 922(g)(9) passes muster.  While the Court need not apply strict scrutiny as Plaintiff contends, the statute would survive even that stringent level of review.  The Sixth Circuit has already suggested that Section 922(g)(9)'s prohibition is "permissible."  *Tyler*, 775 F.3d at 337.  Plaintiff's Second Amendment challenge therefore fails as a matter of law.  Plaintiff also fails to state the basic elements of an equal protection claim.  The Sixth Circuit has recognized that domestic violence misdemeanants are categorically different from individuals committed to a mental institution, and, in any event, it was rational for Congress to

1

permit States to establish relief-from-firearms disability programs for individuals who have been adjudicated mentally defective or committed to a mental institution under State law. Accordingly, the Court should dismiss Plaintiff's claims or enter summary judgment for Defendants.

## ARGUMENT

## I.    Plaintiff's Second Amendment Claims Fail As a Matter of Law.

### A.    Plaintiff's Claims Do Not Implicate a Second Amendment Right.

"The core right recognized in *Heller* is the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir.), *cert. denied*, 133 S. Ct. 375 (2012) (citing *Heller*, 554 U.S. at 635) (internal quotations omitted). "Domestic-violence misdemeanants, by definition, are violent and non-law-abiding."  *Tyler*, 775 F.3d at 337.[1]  Plaintiff's claims therefore do not implicate a Second Amendment right.

### 1.    Section 922(g)(9) Is a Presumptively Lawful Regulatory Measure Under *Heller*.

*Heller* emphasized that the "presumptively lawful regulatory measures" it identified— such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill"—were only "examples" and did not purport to be an exhaustive list.  554 U.S. at 626-27 & n.26.  As explained in Defendants' opening brief, several Courts of Appeals have summarily rejected Second Amendment challenges to Section 922(g)(9) on that ground that it is a presumptively lawful regulatory measure under *Heller*.  *See United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010); *In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) (unpublished); *see also United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011), *cert. denied*,

---

[1] The Federal Defendants have filed a petition for rehearing *en banc* in *Tyler* but do not anticipate that any rehearing would affect the court's analysis of Section 922(g)(9).

132 S. Ct. 1538 (2012) (Section 922(g)(9) "fits comfortably among the categories of regulations that *Heller* suggested would be presumptively lawful.") (citing *Heller*, 554 U.S. at 627 n.26) (internal quotations omitted).

The Sixth Circuit recently did the same, albeit in an unpublished decision, reasoning by analogy to cases dismissing Second Amendment challenges to Section 922(g)(1), the so-called "felon" prohibitor. *Laubis v. Witt*, -- F. App'x --, 2015 WL 140316 at *3-*4 (6th Cir. Jan. 9, 2015) (finding no violation of plaintiff's Second Amendment rights where plaintiff had been convicted of a misdemeanor crime of domestic violence) (citing *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010); *United States v. Khami*, 362 F. App'x 501, 507-08 (6th Cir. 2010)). Following *Laubis* and the Sixth Circuit decisions on which it relied, as well as the reasoning of the decisions cited above, this Court should dismiss Plaintiff's Second Amendment challenge for failing to state a viable Second Amendment claim.

### 2. The Second Amendment Right As Historically Understood Did Not Preclude the Disarmament of Criminals.

Under the first prong of the two-step *Greeno* test, the question is whether Section 922(g)(9) "burdens conduct that falls within the scope of the Second Amendment right as historically understood." *Greeno*, 679 F.3d at 518. Plaintiff's contention that "a lifetime ban on possessing firearms for any purposes does not comport with the Second Amendment," Pl. Mem. in Opp'n to Def. Mot. to Dismiss or for Summ. J. (ECF No. 9) ("Pl. Opp.") at 1, is foreclosed by *Heller* and the Sixth Circuit decisions applying it. As the Court of Appeals has explained, "the *Heller* Court presumed that certain individuals may be '*disqualified* from the exercise of Second Amendment rights.'" *Tyler*, 775 F.3d at 317 (quoting *Heller*, 554 U.S. at 635) (emphasis in *Tyler*). "These statements strongly indicate that the Second Amendment right to possess

3

firearms does not extend to *all* individuals—or at least, that the state may at times limit that right for certain groups of individuals consistent with the Constitution." *Id.*

The Sixth Circuit has already recognized that the Second Amendment as historically understood permitted "the disarmament of serious lawbreakers," *Greeno*, 679 F.3d at 519 (citation omitted), and Plaintiff does not dispute that point. Pl. Opp. at 5. But he contends that domestic violence misdemeanants do not fall outside the scope of the Amendment because: (1) domestic violence was not recognized as a crime until more recently; and (2) not everyone convicted of domestic violence is a serious lawbreaker. *Id.* at 5-6. Neither argument has merit.

First, the fact that laws prohibiting domestic violence post-date the ratification of the Second Amendment "does not automatically render the possession of weapons by [domestic violence offenders] within the scope of the Second Amendment right as historically understood." *Greeno*, 679 F.3d at 519-20 (holding that sentencing enhancement first introduced in 1987 addresses conduct outside the scope of the Second Amendment right). "Nothing in *Heller* suggests such a static reading of the Second Amendment." *Id.* at 519. The issue is not whether the challenged provision (or one close to it) was in effect at the time of the Amendment's ratification, but rather, whether disarming individuals like Plaintiff who were convicted of domestic violence crimes is consistent with the limited right protected by the Amendment. *Id.* As the Seventh Circuit has explained, *Heller* tells us that "statutory prohibitions on the possession of weapons by some persons are proper—and, importantly for current purposes, that the legislative role did not end in 1791." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc), *cert. denied*, 131 S. Ct. 1674 (2011). "[E]xclusions need not mirror limits that were on the books in 1791." *Id.* at 641.

Second, Plaintiff's attempt to downplay the inherent seriousness of his criminal behavior is foreclosed by the Sixth Circuit's recognition that that "[d]omestic-violence misdemeanants, by definition, are violent and non-law-abiding." *Tyler*, 775 F.3d at 337.  Numerous other courts have agreed.  *See, e.g., United States v. Staten*, 666 F.3d 154, 167 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1937 (2012); *Booker*, 644 F.3d at 24-25; *United States v. Chester*, 628 F.3d 673, 690 (4th Cir. 2010); *White*; 593 F.3d at 1206; *In re United States*, 578 F.3d at 1200; *Enos v. Holder*, 855 F. Supp. 2d 1088, 1098-99 (E.D. Cal. 2012), *aff'd*, 585 F. App'x 447 (9th Cir. 2014).  Because the limited right protected by the Second Amendment does not preclude the disarmament of violent criminals like Plaintiff, his claims fall outside the scope of the Second Amendment.[2]

**B.      Even If Plaintiff's Claims Implicate the Second Amendment, Section 922(g)(9) Is Constitutional.**

**1.  The Court Need Not Apply Strict Scrutiny.**

As explained in Defendants' opening brief, no court has applied a standard above intermediate scrutiny to Section 922(g)(9).  Plaintiff contends that this Court is required to apply strict scrutiny in light of the Sixth Circuit's recent decision in *Tyler*, which applied that level of review to an as-applied challenge to Section 922(g)(4), prohibiting possession of a firearm by a person "who has been adjudicated as a mental defective or who has been committed to a mental institution."  18 U.S.C. § 922(g)(4).  However, the Court of Appeals did not hold that strict

---

[2] As explained more extensively in Part I.C., Plaintiff is poorly situated to argue that he falls within the scope of the Second Amendment on the ground that "mere offensive touching" was not "historically understood to disqualify one from the Second Amendment's protection."  Pl. Opp. at 6.  *See Tyler*, 775 F.3d at 331.  Plaintiff himself engaged in violent conduct against his wife that extended far beyond "mere offensive touching."  In any event, the Supreme Court has dismissed the assertion that reading Section 922(g)(9) to encompass "offensive touching" implicates Second Amendment concerns.  *United States v. Castleman*, 134 S. Ct. 1405, 1416 (2014).

scrutiny applies to every Second Amendment challenge.  On the contrary, the court went out of its way to explain that its decision "fits comfortably within" the "judicial landscape," *Tyler*, 775 F.3d at 334, including the series of decisions unanimously rejecting Second Amendment challenges to Section 922(g)(9) after either employing intermediate scrutiny or no heightened constitutional scrutiny at all.  *Id.* at 337-39 (citing *Booker*, 644 F.3d 12; *Staten*, 666 F.3d 154; *Skoien*, 614 F.3d 638; *United States v. Chovan*, 735 F.3d 1127, 1137-41 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 187 (2014); *In re United States*, 578 F.3d 1195; *White*, 593 F.3d 1199).  Moreover, the court expressed skepticism that the distinction between strict and intermediate scrutiny would have much practical effect.  *Tyler*, 775 F.3d at 323, 329-30.

Furthermore, in determining that strict scrutiny was warranted for a constitutional challenge to Section 922(g)(4), the court also distinguished that provision from the other categories of prohibitors in the Gun Control Act, including Section 922(g)(9), suggesting that Section 922(g)(9)'s prohibition is "permissible."  *Id.* at 337; *id.* at 335 ("[W]e do not believe that any other court of appeals in a reasoned opinion has reviewed a firearm restriction as severe as [Section 922(g)(4)] – one that forever deprives a *law-abiding, non-violent*, non-felon of his Second Amendment rights.") (emphasis supplied).  Unlike Section 922(g)(4), Section 922(g)(9) only applies to individuals who "by definition, are violent and non-law-abiding," only "targets volitional conduct," and "is not necessarily permanent because of the possibility of pardon or expungement."  *Id.* at 337.  Indeed, following *Tyler*, the Court of Appeals rejected a Second Amendment challenge to Section 922(g)(9) without applying any level of heightened constitutional scrutiny.  *Laubis*, 2015 WL 140316 at *3-*4.  This Court need not apply strict scrutiny to the challenged regulation.

### 2.  In Any Event, Section 922(g)(9) Passes Muster Under Any Level of Review.

Even if the Court applies strict scrutiny, Section 922(g)(9) "furthers a compelling interest and is narrowly tailored to achieve that interest." *Tyler*, 775 F.3d at 323 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)).  As noted above, the Court of Appeals has already expressed its view that the prohibition in 922(g)(9) is likely "permissible." *Id.* at 337.

Plaintiff does not dispute that Section 922(g)(9) "furthers a compelling interest of reducing domestic gun violence." Pl. Opp. at 9, and indeed, the Court of Appeals has observed that "virtually every gun control law is aimed at serving interests that would usually be seen as compelling—preventing violent crime, injury, and death." *Tyler*, 775 F.3d at 329 (citation omitted).

Defendants have demonstrated that Section 922(g)(9) is narrowly tailored to achieve this compelling interest.  "Narrow-tailoring is essentially a means-end calculation" and "does not demand a perfect fit." *Id.* at 331.  While Defendants have adduced substantial empirical evidence demonstrating the high rate of domestic violence recidivism and that "firearms and domestic strife are a potentially deadly combination," *United States v. Hayes*, 555 U.S. 415, 427 (2009), *see* Def. Mem. (ECF No. 6-1) at 20-23, this evidence simply confirms the conclusion compelled by common sense:  preventing perpetrators of domestic violence from possessing guns will reduce domestic gun violence.[3]

---

[3] *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (government can carry its burden under strict scrutiny "based solely on history, consensus, and simple common sense"), *cited in Tyler*, 775 F.3d at 331.  *See also Staten*, 666 F.3d at 167 (relying on empirical evidence as well as "logic and common sense" to uphold constitutionality of Section 922(g)(9)); *Skoien*, 614 F.3d at 642 (reaching same conclusion based on "logic and data").

Plaintiff contends that 922(g)(9) is "overbroad" because the majority of domestic violence crimes involve simple assault rather than aggravated assault, and therefore, according to Plaintiff, "are not within the category of 'serious' domestic violence offenses supposedly intended to be the target of the law."  Pl. Opp. at 8.  As an initial matter, the Supreme Court has already rejected the assertion that Section 922(g)(9) was intended only to cover the most severe instances of domestic violence.  *See Castleman*, 134 S. Ct. at 1415 ("[N]othing about these Senators' isolated references to severe domestic violence suggests that they would not have wanted § 922(g)(9) to apply to a misdemeanor assault conviction like Castleman's").  The Supreme Court also rejected the cursory assertion that its broad reading of the statute implicated Second Amendment concerns.  *Id*. at 1416.

Moreover, Plaintiff provides no support for the notion that domestic violence involving simple assault is not "serious," and indeed, the reports on which Plaintiff relies strongly suggest otherwise.  The Bureau of Justice Statistics Report cited by Plaintiff indicates that the victim sustained an injury in 90% of domestic violence cases in which the defendant was charged with a misdemeanor, and that the defendant was incarcerated in over 81% of cases involving a conviction for misdemeanor domestic violence.  ECF No. 9-1 at 5, 7.  As the Supreme Court has recognized, "[d]omestic violence often escalates in severity over time, . . . and the presence of a firearm increases the likelihood that it will escalate to homicide."  *Castleman*, 134 S. Ct. at 1408-09 (internal citations omitted).  This is precisely the danger that Section 922(g)(9) was enacted to prevent.

Plaintiff's attempt to undermine the high rate of recidivism for domestic violence offenders also fails.  Defendants' opening brief explained that, consistent with the finding of numerous courts, there is a high rate of recidivism for domestic violence offenders.  Def. Mem.

at 21-22 (citing studies finding recidivism rates ranging from 17% to 80%, depending on the methodology employed).  As Defendants explained, and as numerous Courts of Appeals have recognized, recidivism rates that rely solely on arrests or police reports significantly understate the problem because they fail to "account for the many repeat domestic violence acts that are never reported to the police."  *Staten*, 666 F.3d at 164; *see also Skoien*, 614 F.3d at 644 ("The full recidivism rate includes violence that does not lead to an arrest."); *Chovan*, 735 F.3d at 1140 (same).  Therefore, among other studies, Defendants cited research indicating that recidivism rates range from "40% to 80% or more of repeat violence when victims are followed longitudinally and interviewed directly."  Carla Smith Stover, *Domestic Violence Research*, 20 J. Interpersonal Violence 448, 450 (2005) (ECF No. 6-7), *cited in Chovan*, 735 F.3d at 1140, *Staten*, 666 F.3d at 164-65, *and Skoien*, 614 F.3d at 644.  *See also* Stover, 20 J. Interpersonal Violence at 451 ("Use of police or court records to document recidivism rates is problematic because a high proportion of repeat incidents of violence are not reported to criminal justice systems.  For more accurate estimates of recidivism, direct contact and information gathering from victims and other sources are paramount[.]").

Plaintiff now contends that this recidivism research is outdated because some of it predated mandatory arrest laws for domestic violence complaints, which have served to increase the rate of arrest for domestic violence incidents reported to police.  Pl. Opp. at 9 (citing National Institute of Justice Report).[4]  However, the report on which Plaintiff relies fails to undercut Defendants' recidivism evidence because it only addresses arrest rates *when a domestic violence incident is reported to the police.  See* David Hirschel, National Institute of Justice, *Domestic Violence Cases: What Research Shows About Arrest and Dual Arrest Rates* (2008) (ECF No. 9-

---

[4] Plaintiff does not specify which State mandatory or preferred arrest laws, if any, post-date the data relied on by Defendants.

9

4) at 7 (explaining that report addresses and relies upon "each incident reported to police").  As explained above, measuring recidivism rates based on police reports and arrest records is necessarily underinclusive.  Plaintiff has provided no evidence to undermine the conclusion that domestic violence offenders tend to recidivate.[5]

Given the seriousness of domestic violence, the indisputably high recidivism rate, and the reality that "domestic violence often escalates in severity over time," *Castleman*, 134 S. Ct. at 1408, there is little doubt that Section 922(g)(9) is narrowly tailored to achieve its compelling objective.  It is of course the case that not every single person convicted of a misdemeanor crime of domestic violence will engage in improper conduct if permitted to possess a firearm.  But "a very close match" is sufficient; even "strict scrutiny does not call for perfect tailoring."  *Tyler*, 775 F.3d at 332.  "A prophylactic approach" that "obviates the necessity for large numbers of individualized determinations" is permissible even under strict scrutiny.  *Id.* at 332 & n.22 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 782 (1975)) (internal alterations and quotation marks omitted); *Tyler*, 775 F.3d at 332. (Congress "may cast a wider net than is necessary to perfectly remove the harm").

The relevant question is whether persons convicted of a misdemeanor crime of domestic violence are "sufficiently dangerous, as a class" to prophylactically disarm all such individuals.  *Tyler*, 775 F.3d at 333.  As the Court of Appeals has explained, "[d]omestic-violence misdemeanants, by definition, are violent and non-law-abiding, and the prohibition targets volitional conduct.  And the ban is not necessarily permanent because of the possibility of pardon

---

[5] Indeed, a study cited by Plaintiff specifically found that 41% of family violence incidents are never reported to the police.  Matthew R. Durose, Bureau of Justice Statistics, *Family Violence Statistics* (June 2005) (ECF No. 9-2) at 22.  For this reason, Plaintiff's assertion that he "has had no other criminal convictions in his life, either before or after his single offense," Pl. Opp. at 9, even if true, is of limited probative value.

or expungement." *Id.* at 337.  Considering these factors, the court concluded that the prohibition in 922(g)(9) was likely "permissible." *Id. Accord Chovan*, 735 F.3d at 1142 ("Congress permissibly created a broad statute that only excepts those individuals with expunged, pardoned, or set-aside convictions and those individuals who have had their civil rights restored.").  Thus, the answer to the *Tyler* question of whether persons convicted of a misdemeanor crime of domestic violence are sufficiently dangerous as a class to prophylactically disarm all such individuals is a resounding yes.  Other courts have so held unanimously,[6] and the Sixth Circuit has indicated its agreement with that result.  *See Tyler*, 775 F.3d at 337 (characterizing Section 922(g)(9) prohibition as "permissible"); *id.* at 334 ("our decision  . . . fits comfortably within" "the judicial landscape").

Plaintiff also contends that Section 922(g)(9) is overbroad because the methods of securing relief provided in 18 U.S.C. § 921(a)(33)(B) are inadequate.  Pl. Opp. at 10-12.  This is not the case.  First, the Sixth Circuit has expressly recognized that the firearms disability imposed by Section 922(g)(9) "is not necessarily permanent because of the possibility of pardon or expungement." *Tyler*, 775 F.3d at 337 (contrasting this provision with Section 922(g)(4)).  Other courts have likewise "focused on the lack of permanence of the ban in upholding § 922(g)(9)." *Id.* at 338 (citing *Chovan*, 735 F.3d at 1138)).[7]

While Plaintiff complains that the statutory methods for securing relief are inadequate because "[t]he politics of both firearms and domestic violence make a pardon beyond realistic to expect," Pl. Opp. at 11, the Sixth Circuit has already explained that variations in the difficulty of

---

[6] *See Booker*, 644 F.3d 12; *Staten*, 666 F.3d 154, *Skoien*, 614 F.3d 638; *Chovan*, 735 F.3d 1127; *In re United States*, 578 F.3d 1195; *White*, 593 F.3d 1199.

[7] As noted in Defendants' opening brief, "the frequency of such expungements seems to have risen in many states since the enactment of § 922(g)(9)." *Tyler*, 775 F.3d at 339 n.31 (citations omitted).

obtaining state discretionary relief from a past conviction do not render a federal statute unconstitutional. *See Tyler*, 775 F.3d at 343 ("Congress is not responsible for simple variance, not of its own design, among state procedures."). *See also Skoien*, 614 F.3d at 645 ("states' widely disparate approaches" to granting relief from firearms disabilities "do [] not call into question federal firearms limits based on state convictions") (citing *Logan v. United States*, 552 U.S. 23 (2007)). As one court explained in rejecting a facial and as-applied Second Amendment challenge to Section 922(g)(9), while it is true that "the majority of domestic violence offenders will not regain their firearms possession right, . . . it is up to state legislatures to constrict or expand the ease with which convicted misdemeanants may apply for and receive relief" under 18 U.S.C. § 921(a)(33)(B)(ii). *United States v. Smith*, 742 F. Supp. 2d 855, 868-69 (S.D. W.Va. 2010), *aff'd on other grounds*, 456 F. App'x 223 (4th Cir. 2011). In any event, Plaintiff has not even tried to avail himself of any state relief that may be available to him, and therefore is not properly situated to argue that these procedures are constitutionally inadequate.[8]

In short, neither the mechanisms for obtaining relief from Plaintiff's firearms disability (which Plaintiff concedes he has not even attempted to exhaust), nor the lack of a perfect fit— which would require extensive individualized determinations before a firearms disability may be imposed—render Section 922(g)(9) unconstitutionally overbroad.

---

[8] Moreover, while Plaintiff argues that denying him the right to possess a firearm "without providing means to challenge *the basis* on which such a restriction is imposed, necessarily will violate the rights of individuals such as the Plaintiff," Pl. Opp. at 12 (emphasis in original), he does not contend that his underlying domestic violence conviction—which provides the sole basis for the firearm restriction—was procedurally deficient. *Cf.* 18 U.S.C. § 921(a)(33)(B)(i) (excluding from statutory definition of "misdemeanor crime of domestic violence" all cases unless (I) "the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case," and (II) in qualifying cases "the case was tried by a jury" or "the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise").

**C.  The Application of Section 922(g)(9) to Plaintiff Comports with the Second Amendment.**

Plaintiff next contends that, even if Section 922(g)(9) is constitutional on its face, its application to him violates the Second Amendment because he is now a "law-abiding" person by virtue of the fact that he has not been convicted of another crime since 1997.  Pl. Opp. at 12-13. Plaintiff provides no support for his assertion that "the active tense of 'law-abiding' implies that its limitation is concerned with more recent conduct than something that occurred in an individual's distant past," *id.* at 12-13, nor does he explain what constitutes "recent" versus "distant" conduct.  In any event, Plaintiff's argument is foreclosed by the Sixth Circuit's recognition that "[d]omestic-violence misdemeanants, by definition, are violent and non-law-abiding."  *Tyler*, 775 F.3d at 337.  The court made that statement categorically, without regard to the length of time that has elapsed since an individual's domestic violence conviction(s).  Other courts have held similarly.  *See, e.g., Chester*, 628 F.3d at 690 ("Undisputedly, those convicted for having committed violent assaults against cohabitants and family members in general . . . are not law-abiding, responsible citizens.").[9]

Plaintiff's styling of his claim as an "as-applied" challenge does not permit him to argue

---

[9] Plaintiff's case is thus readily distinguishable from both *Binderup v. Holder*, No. 13-cv-06750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014), *appeal docketed*, and the dictum in *Schrader v. Holder*, 704 F.3d 980 (D.C. Cir.), *cert. denied*, 134 S. Ct. 512 (2013), on which Plaintiff relies. Pl. Opp. at 13.  In *Binderup*, the district court emphasized its understanding that the plaintiff had not engaged in any "violence, force, or threat of force," either in connection with, before or after his conviction.  2014 WL 4764424 at *22-*23.  This is obviously not true for Plaintiff here.  And while the *Schrader* court speculated in dictum that it "would hesitate to find [the plaintiff] outside the class of 'law-abiding, responsible citizens' whose possession of firearms is, under *Heller*, protected by the Second Amendment," 704 F.3d at 991 (quoting *Heller*, 554 U.S. at 635), in part because his conviction involved "only a fistfight" on a public street "with a member of a street gang" that "occurred over forty years ago," *id.* at 983, 991, that plaintiff's conduct is readily distinguishable from most instances of domestic violence, which can involve "seemingly minor act[s]" that can "accumulate[] over time," "subject[ing] one intimate partner to the other's control."  *Castleman*, 134 S. Ct. at 1412.

13

for an exception to a general rule.  In analogous circumstances, the Supreme Court has recognized that, in evaluating a First Amendment as-applied challenge, "it is readily apparent that this question cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity."  *United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993).  The Court in *Edge Broadcasting* emphasized that it could not hold the law unconstitutional as applied to a plaintiff solely on the basis that "applying the general statutory restriction to [the plaintiff], in isolation, would no more than marginally" serve the government's purpose.  *Id.* at 430.  "Even if there were no advancement as applied" to an individual plaintiff, there would remain "the regulation's general application to others."  *Id.* at 427.  Similarly, in the Second Amendment context, Courts of Appeals have expressed skepticism regarding the adoption of a constitutional analysis that varies as applied to each individual plaintiff.  *See, e.g., United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("[S]uch an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning."); *Skoien*, 614 F.3d at 641 ("Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.").

Courts have had little trouble rejecting similar as-applied challenges to Section 922(g)(9) and the parallel provision in Section 922(g)(8), involving persons subject to domestic protection orders.  *See*, *e.g.*, *Chovan*, 735 F.3d at 1142 ("application of § 922(g)(9) to Chovan is substantially related to the government's important interest of preventing domestic gun violence"); *Staten*, 666 F.3d at 167 (rejecting as-applied challenge to Section 922(g)(9) even though not "every domestic violence misdemeanant would . . . necessarily misuse a firearm . . . if

14

permitted to possess one"); *United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012) (same

with respect to Section 922(g)(8)); *United States v. Reese*, 627 F.3d 792, 804 (10th Cir. 2010),

*cert. denied*, 131 S. Ct. 2476 (2011) (rejecting as-applied challenge to Section 922(g)(8), where

"prosecution of Reese under § 922(g)(8) is consistent with the government's intended purpose in

implementing that statute").[10]

      Moreover, as noted above, the fact that Plaintiff has not been convicted of another crime

is of limited value in answering the question whether he may pose a threat to domestic intimates

or other relatives.  Thus, the fact that 17 years have passed since Plaintiff's domestic violence

conviction does not render the statute unconstitutional as applied to him.  *See Chovan*, 735 F.3d

at 1142 (rejecting as-applied Second Amendment challenge where, assuming litigant had no

history of domestic violence for 15 years, he did not contradict government's evidence that the

rate of domestic violence recidivism is high and failed to prove "that if a domestic abuser has not

committed domestic violence for fifteen years, that abuser is highly unlikely to do so again").[11]

---

[10] Notably, in *Reese*, the Tenth Circuit expressly stated that it would reach the same result "[e]ven if we were to apply a strict scrutiny test," 627 F.3d at 804 n.4, undermining Plaintiff's contention that "none of the cases cited by the Government in support of dismissing Plaintiff's as-applied challenge applied strict scrutiny."  Pl. Opp. at 15.  *See Tyler*, 775 F.3d at 329 (citing *Reese* for the proposition that "the decision to apply intermediate scrutiny over strict scrutiny" was not "generally the crucial keystone that won the government's case").

[11] Plaintiff's attempts to distinguish *Chovan* are unavailing.  While Plaintiff is correct that the defendant in *Chovan* was "already in violation of the law," having been charged with and convicted of being in possession of a firearm in violation of Section 922(g)(9), Pl. Opp. at 13, the Ninth Circuit had little trouble upholding the application of Section 922(g)(9) to persons like Plaintiff, who sought prospective injunctive relief from the application of Section 922(g)(9). *Enos v. Holder*, 585 F. App'x 447, 447-48 (9th Cir. 2014).  Additionally, while Plaintiff is correct that the defendant in *Chovan* had, shortly before his arrest, allegedly "become violent with" and threatened to kill his wife, Pl. Opp. at 14; *see Chovan*, 735 F.3d at 1141, the Ninth Circuit made clear that its decision did not depend in any way on that alleged incident.  *Chovan*, 735 F.3d at 1142  (rejecting defendant's "as-applied" challenge to Section 922(g)(9) "even if we were to set aside the March 2010 domestic abuse call and assume that Chovan has had no history of domestic violence since 1996").

Notably, Plaintiff does not argue that he "falls outside the intended scope" of Section 922(g)(9).  *Greeno*, 679 F.3d at 521 (rejecting as-applied Second Amendment challenge to sentencing enhancement where litigant failed to show that he "falls outside the intended scope of the enhancement").  Indeed, a review of the records underlying Plaintiff's conviction confirms that Plaintiff falls squarely within the "intended scope" of Section 922(g)(9).  Plaintiff was arrested and charged with domestic violence under Ohio Revised Code § 2919.25 after police reports indicated that Plaintiff "threw his wife up against a wall, then knocking her to the floor." *See* Stark County Sheriff's Office Arrest Report (Nov. 1, 1997) (attached as Ex. 1).  Plaintiff's wife "received a cut to her head, when [Plaintiff] tried to remove her wedding rings."  *Id.* Plaintiff was charged in the Municipal Court of Canton, Ohio with "knowingly caus[ing] or attempt[ing] to cause physical harm to a family or household member [b]y throwing his wife [] up against a wall, then pushing her to the floor."  *State of Ohio v. Terry Lee Stimmel*, Complaint (Nov. 2, 1997) (attached as Ex. 2).  On November 6, 1997, Plaintiff, represented by counsel, pleaded no contest to one count of domestic violence.  Canton Municipal Court Record, Case No. 97 CRB 04275 (attached as Ex. 3).  The court sentenced Plaintiff to 180 days in jail, all but one of which were suspended, and ordered him to pay a $100 fine and costs.  *Id.*  The Court further prohibited Plaintiff from having contact with the victim and ordered him to "sign up and comply with [the] Choices Program."  *Id.*[12]

Both the Supreme Court and the Sixth Circuit have recognized that "a person to whom a statute properly applies can't obtain relief based on arguments that a differently situated person might present."  *Tyler*, 775 F.3d at 331 (citations omitted); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987).  Here, there can be little doubt that Congress's decision to

---

[12] The court's order that Plaintiff have no contact with the victim does not appear to be temporally limited.

"prophylactically" disarm Plaintiff, within the "net" of domestic violence offenders, was permissible. *Tyler*, 775 F.3d at 333-34. Plaintiff's case is fundamentally indistinguishable from the numerous other cases in which courts have rejected as-applied challenges to Section 922(g)(9). Because Plaintiff falls squarely within the "intended scope" of Section 922(g)(9), *Greeno*, 679 F.3d at 521, applying the statute to him does not violate the Second Amendment.

## II.     Plaintiff's Equal Protection Claims Fail As a Matter of Law.

Plaintiff alleges two distinct equal protection claims in Counts III and IV of his complaint. Both fail as a matter of law.

### A.      Plaintiff Has Conceded His Equal Protection Claim Premised on the Existence of Corporate Relief from Firearms Disability.

With respect to Plaintiff's first equal protection argument, regarding "Congressional appropriations permitting corporations to apply for Section 925(c) relief from disability while preventing individual persons from applying," Pl. Opp. at 16, Plaintiff has conceded that he is not similarly situated to a corporation seeking restoration of its firearms rights by failing to respond to the arguments in Defendants' opening brief. *See, e.g., Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"). Indeed, the fragment quoted above is the only place in Plaintiff's 20-page brief where he addresses Count III of the Complaint, but he entirely fails to address that claim on the merits. Accordingly, the Court should dismiss Count III.

### B.      Plaintiff Is Not Similarly Situated to a Person Subject to a Section 922(g)(4) Firearms Disability.

Plaintiff's equal protection claim challenging the 2007 NICS Improvement Amendments Act of 2007 ("Improvement Act") is foreclosed by the recent Sixth Circuit decision explaining

why persons committed to a mental institution are different from individuals convicted of misdemeanor crimes of domestic violence.  *See Tyler*, 775 F.3d at 337-38.  Ignoring this directly controlling precedent, as well as the decisions of several Courts of Appeals rejecting equal protection challenges to Section 922(g)(9), Plaintiff rests his claim on a single district court decision that was vacated nearly 30 years ago.  Moreover, that decision actually supports the notion that convicted criminals such as Plaintiff are not similarly situated to persons who have been committed to a mental institution.  *See Galioto v. Dep't of Treasury*, 602 F. Supp. 682, 689 (D.N.J. 1985), *vacated as moot*, 477 U.S. 556 (1986) ("individuals who are convicts have demonstrated that they are capable of criminal activity by actually committing the crime for which they were convicted," while "former mental patients have not, by virtue of that status, indicated anything more than that they at one time were adjudged to have a propensity for disruptive activity").

Plaintiff provides no support for his assertion that "the legal justifications for denying relief to those with domestic violence convictions are similar to those previously used to deny relief to the formerly mentally ill."  Pl. Opp. at 18.  In fact, the justifications for the two provisions are quite different.  As Plaintiff asserts, those who have been committed to mental institution have had their firearms rights rescinded on the basis of "clinical predictions," which Plaintiff characterizes as "fundamentally of very low reliability," Pl. Opp. at 18-19 (quoting *Galioto*, 602 F. Supp. at 691, in turn quoting *Estelle v. Smith*, 451 U.S. 454, 472 (1981)).  On the other hand, the basis for Plaintiff's firearm disability is his criminal conviction—based on a proof beyond a reasonable doubt standard—for having committed violent acts against his wife.[13]

_____

[13] Nor is Plaintiff aided by his assertion that, like an individual committed to a mental institution, he "did not understand that his misdemeanor plea would forever prohibit him from possessing firearms."  Pl. Opp. at 18.  As the Supreme Court has held, "the rule that a plea must be

Because Plaintiff is not similarly situated to individuals subject to a Section 922(g)(4) firearms disability, his equal protection claim "do[es] not get off the ground." *Jolivette v. Husted*, 694 F.3d 760, 771 (6th Cir. 2012).

### C.      In Any Event, the Improvement Act Is Rational.

Plaintiff's failure to identify similarly situated individuals who were treated differently defeats his equal protection claim.  Nevertheless, even if he could so point, the challenged provisions of the Improvement Act readily satisfy rational basis review and thus mean Plaintiff's equal protection claim should be dismissed.  Under that standard of review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Maxwell's Pic-Pac, Inc. v. Dehner*, 739 F.3d 936, 940 (6th Cir. 2014) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Contrary to Plaintiff's contention, Congress's decision to provide an opportunity to seek relief to persons who have been adjudicated mentally defective or committed to a mental institution—a class of persons who, unlike Plaintiff, was previously subject to a lifetime prohibition without any opportunity for relief—was rational.

Congress's concerns about "(1) use of limited valuable resources for investigating these difficult cases and (2) consequences to innocent citizens if ATF makes a mistake," *United States v. McGill*, 74 F.3d 64, 67 (5th Cir. 1996), in defunding the Section 925(c) application process are not undermined by permitting States to establish their own relief from disabilities programs.[14]

---

intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970).

[14] Plaintiff is simply incorrect when he claims that the State relief from disability programs authorized by the Improvement Act are "*identical* to Section 925(c)."  Pl. Opp. at 19 (emphasis in original).  *See Tyler*, 775 F.3d at 313 & n.2

Contrary to Plaintiff's contention, the challenged provisions of the Improvement Act are not premised on a claim that "those previously suffering from mental illness will in all cases be permanently cured," Pl. Opp. at 18. Rather, these provisions attempt to provide some avenue of relief to the subset of individuals "who have overcome a disqualifying mental illness or disability," 153 Cong. Rec. S15,970-02 (daily ed. Dec. 19, 2007) (statement of Sen. Leahy), by permitting "a person disqualified on the basis of legal mental illness to prove to the State that he or she no longer poses a danger to society." 153 Cong. Rec. H12,351-04 (daily ed. Oct. 31, 2007) (statement of Rep. McCarthy). In any event, that Congress sought to remedy the perceived defect of a permanent disability for a particular class of persons did not obligate it to afford identical relief to other prohibited groups. It is well established that Congress is "free to take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955).[15] Accordingly, Plaintiff's equal protection claim fails as a matter of law, and the Court should dismiss Count IV or enter summary judgment for Defendants.

## CONCLUSION

Section 922(g)(9) does not preclude conduct that is protected by the Second Amendment and would pass constitutional muster in any event. Plaintiff's equal protection claims likewise fail as a matter of law. Accordingly, the Court should dismiss this case or enter summary judgment for Defendants.

---

[15] Numerous courts have rejected similar equal protection challenges to Section 922(g)(9). *See, e.g.*, *United States v. Lewitzke*, 176 F.3d 1022, 1027 (7th Cir. 1999) (rejecting contention that Section 922(g)(9) violates equal protection based on argument that other classes of persons also pose a danger to society if armed; "[f]or a legislature concerned about the harm that may befall victims of domestic violence from firearms, persons already convicted of domestic violence are a logical place to start"). *Accord United States v. Lewis*, 236 F.3d 948, 949 (8th Cir. 2001); *Fraternal Order of Police v. United States*, 173 F.3d 898, 903-04 (D.C. Cir. 1999).

Dated:  February 18, 2014             Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

STEVEN M. DETTELBACH
United States Attorney

  /s/ Lesley Farby
LESLEY FARBY
(D.C. Bar No. 495625)
U.S. Department of Justice
Civil Division, Rm. 7220
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 514-3481
Fax: (202) 616-8470
Email: lesley.farby@usdoj.gov
*Counsel for Defendants*

21

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing memorandum is 20 pages in length and within the page limit for a memorandum relating to a dispositive motion in an unassigned/standard track matter.

   /s/ Lesley Farby
Lesley Farby

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2015, a copy of the foregoing document was filed electronically.  Notices of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

   /s/ Lesley Farby
Lesley Farby

22